UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mark Raupp,

              Plaintiff,        Case No. 24-10565

v.                                      Judith E. Levy
                                       United States District Judge

Compass Group USA, Inc.,
                                       Mag. Judge Kimberly G. Altman

             Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [3] AND DENYING AS MOOT WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [9]**

Before the Court is Defendant's motion to compel arbitration. (ECF No. 3.) Plaintiff Mark Raupp sues Defendant Compass Group USA, Inc. ("Compass") for violating the Elliott-Larsen Civil Rights Act ("ELCRA"). Plaintiff asserts claims of discrimination based on sexual orientation and retaliation for participating in an investigation and legal proceedings. (ECF No. 1, PageID.3.)

For the reasons set forth below, Defendant's motion to compel arbitration is granted. (ECF No. 3.) Additionally, the Court will deny as

moot without prejudice Plaintiff's motion for leave to file a first amended complaint. (ECF No. 9.)

## I. Background

Raupp was employed by Compass from 2016 to 2023. (ECF No. 1, PageID.7–8.) Plaintiff was initially hired by Compass's "predecessor in interest" in September 2015. (*Id.* at PageID.8.)

In 2022, while Raupp was working as an Assistant Director of Dining Services, a female food service employee he supervised, Johnson, accused him of sexual harassment. (*Id.* at PageID.8–9.) Compass investigated this complaint and, during the investigation, Raupp disclosed that he was gay, to suggest that he had not sexually harassed Johnson. (*Id.* at PageID.10.) Compass's management concluded the investigation and determined that Plaintiff had not sexually harassed Johnson. (*Id.*) Johnson then filed a lawsuit in Michigan state court against Compass and Plaintiff, alleging violations of ELCRA. (*Id.* at PageID.11.) That case settled and was dismissed on October 10, 2023. (*Id.*)

Raupp's employment was terminated on October 27, 2023. (*Id.*) When Raupp asked certain members of Compass management why he

2

was fired, he was first told that they did not know, and then he was told that his termination was due to his participation in the Johnson litigation. (*Id.* at PageID.11–12.)

Plaintiff filed this complaint in the Wayne County Circuit Court on February 1, 2024. (ECF No. 1, PageID.2.) Defendant timely removed the action to federal court on March 6, 2024. (*Id.*)

## II. Legal Standard

"The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. § 2). The FAA instructs courts to enforce arbitration agreements if "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

The Court examines "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007); *see also Glazer*, 394 F.3d at 450 ("[I]t is well-established that any doubts regarding

3

arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted). Further, "the FAA preempts state laws and policies regarding arbitration[,]" although state contract law "governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citations omitted). Additionally, "[i]t is well settled that judicial protection of pre-dispute arbitral agreements extends to agreements to arbitrate statutory employment discrimination claims." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).

### III. Analysis

#### A. Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

Both parties agree that the Federal Arbitration Act governs the arbitration provision (ECF No. 3, PageID.31; ECF No. 5, PageID.77), however Plaintiff contends that the recently enacted amendment to the FAA, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401, 402, renders this

4

arbitration agreement invalid and unenforceable. (ECF No. 5, PageID.79.)

The EFAA states as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . , no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).

Plaintiff first argues that the EFAA applies to his suit because his "retaliation claims relate to Employee X's[1] sexual harassment dispute." (ECF No. 5, PageID.81.) This argument fails under these facts. The EFAA states that the arbitration agreement is not enforceable or valid "at the election of the person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). To the extent Plaintiff argues that he may elect to invalidate the arbitration agreement because of the sexual harassment accusation against *him*, the Court disagrees. The

---

[1] Plaintiff's response brief to Defendant's motion to compel arbitration (ECF No. 5) refers to "Employee X" as the employee who accused him of sexual harassment. Employee X appears to refer to Johnson. (ECF No. 1, PageID.8 (identifying the employee who accused Plaintiff of sexual harassment).)

5

plain text of the EFAA confers the choice of whether or not arbitration is required to the person who "alleges conduct constituting a sexual harassment dispute." *Id.* Plaintiff does not allege conduct constituting sexual harassment; instead, it was Johnson, not Plaintiff, who did so. As such, Plaintiff cannot invoke the EFAA to invalidate the arbitration clause due to another person's sexual harassment allegation.

Next, Plaintiff argues that the EFAA is applicable to this arbitration agreement because he himself alleges a sexual harassment dispute. (ECF No. 5, PageID.81.) "Sexual harassment dispute" is defined by the EFAA as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Because Plaintiff brings suit under ELCRA, alleging retaliation and unlawful discharge on the basis of sex (sexual orientation) (ECF No. 1, PageID.12–13), the Court must determine if Plaintiff has alleged sexual harassment in violation of ELCRA, the applicable state law. *See Scoggins v. Menard, Inc.*, No. 2:24-CV-00377, 2024 WL 3860464, at *4 (S.D. Ohio Aug. 19, 2024).

Plaintiff has not alleged sexual harassment under state law. ELCRA defines sexual harassment as the following:

6

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

Mich. Comp. Laws § 37.2103(k).

Plaintiff's complaint does not allege that he was subject to any unwelcome sexual advances, requests for sexual favors, or conduct or communication of a sexual nature. (ECF No. 1.) As such, he has not alleged a "sexual harassment dispute" pursuant to ELCRA.

Plaintiff also contends that his "allegations regarding his own sexual harassment constitute a 'sexual harassment dispute' under federal law." (ECF No. 5, PageID.85.) He argues that, because he

7

alleges that he was subject to "heightened scrutiny," he has sufficiently pled an allegation of sexual harassment pursuant to Title VII. (*Id.* at PageID.83–84.) Plaintiff states in his response that he was subjected to a "negative work environment" after his sexual orientation was revealed. (ECF No. 5, PageID.83, 85.) Plaintiff's affidavit, which was filed with his response to the motion to compel arbitration, shares that he was shunned by management, denied opportunities, and subject to heightened scrutiny after he disclosed his sexual orientation. (ECF No. 5-2, PageID.95–96.)[2] Plaintiff has not alleged sexual harassment such that the EFAA would apply to this dispute.[3] The EFAA requires an allegation of "conduct constituting a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402(a). If the EFAA requires an allegation of "conduct constituting a sexual harassment dispute," it follows that Plaintiff must allege sexual harassment in the complaint.[4]

---

[2] In Plaintiff's response to the motion to compel arbitration, he mentions "subsequent post-termination blackballing." (ECF No. 5, PageID.83.) However, he does not discuss "post-termination blackballing" in his affidavit. (ECF No. 5-2, PageID.95–96.)

[3] Plaintiff's proposed amended complaint adds federal claims under Title VII. (ECF No. 9.)

[4] Some courts have interpreted the EFAA as requiring a plausible allegation of sexual harassment for the EFAA to be applicable to an arbitration agreement.

While Plaintiff describes heightened scrutiny, shunning, and reduced opportunities in his affidavit (ECF No. 5-2), these allegations do not appear in the complaint or the proposed amended complaint. (ECF Nos. 1, 9.) The only adverse employment action alleged in his complaint (or the proposed amended complaint) is his termination. Further, Plaintiff does not provide any evidence or caselaw that an allegation of unjust termination, without more, is sufficient for a claim of sexual harassment pursuant to Title VII, or any other federal law.[5]

---

*See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023). The court in *Yost* reasoned that "the term 'alleged' as used in [the definition of "sexual harassment dispute] is best read to implicitly incorporate the plausibility standard" utilized in Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *Id.* at 585. Other courts, while declining to agree that the Rule 12(b)(6) standard is "universally appropriate for EFAA claims," have determined that the EFAA applies to claims that *can* survive a Rule 12(b)(6) motion to dismiss. *See Scoggins*, 2024 WL 3860464, at *3–4; *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535 (S.D.N.Y. 2023).

The Court need not determine whether the use of the word "alleging" implicates the Rule 12(b)(6) motion to dismiss standard. Plaintiff's allegations lack any mention of harassment such that it is not covered by the plain meaning of the ERAA's text. To the extent Plaintiff suggests that his affidavit (ECF No. 5-2) contains allegations of sexual harassment, the Court is not convinced. In any event, a plaintiff cannot add a new claim to his complaint through briefing or an affidavit that is not attached to the complaint. *See, e.g.*, *CNA Ins. Co., Ltd. v. Mentor Magnetic Imaging, Inc.*, No. 1:08-CV-241, 2009 WL 10688218, at *5 (N.D. Ohio Sept. 16, 2009); *Galaxy Foods LLC v. Aryz Trading LLC*, No. 23-CV-11476, 2023 WL 8025818, at *4 (E.D. Mich. Nov. 20, 2023).

[5] Plaintiff does not allege in his complaint that his termination was related to a claim of sexual harassment. For example, an allegation that a plaintiff was

As such, Plaintiff has not "alleg[ed] conduct constituting a sexual harassment dispute" as is required by the EFAA. 9 U.S.C. § 402(a).

### B. The Arbitration Agreement as a valid contract

"[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms." *In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). When determining a motion to compel arbitration pursuant to the FAA, a court must "engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).[6]

Defendant, as the party seeking to enforce an arbitration agreement, has the burden to demonstrate the agreement's existence.

---

subject to quid pro quo sexual harassment and was fired for refusing to submit to a supervisor's sexual demands could result in application of the EFAA.

[6] If the arbitration agreement delegates questions of arbitrability to the arbitrator, the Court's role is altered. *See In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 878 (6th Cir. 2021). Here, neither party suggests that the arbitration agreement delegates questions of arbitrability. (*See* ECF Nos. 3, 5; *see also* ECF No. 3-2, PageID.52 (arbitration agreement).)

*Ford v. Midland Funding LLC*, 264 F. Supp. 3d 849, 855 (E.D. Mich. 2017) (citing *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 499 Mich. 74, (2016)). Defendant argues that a valid arbitration agreement exists between the parties, and that the dispute is within the scope of the agreement. (ECF No. 3, PageID.34.) Defendant presents a copy of the arbitration agreement, which appears to be digitally signed by Plaintiff on October 5, 2019. (ECF No. 3-2, PageID.52.) The arbitration agreement includes a provision that states:

> Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise.

(*Id.*)

It is undisputed that this dispute "falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. The arbitration agreement explicitly states that disputes relating to discrimination or retaliation are included within its scope. (ECF No. 3-2, PageID.52.)

However, Plaintiff contends that a valid agreement to arbitrate does not exist because Defendant did not accept the agreement and no contract was formed. (ECF No. 5, PageID.88–89.) Notably, Plaintiff does

11

not provide any citations to caselaw or other sources in support of this assertion.

First, Defendant's lack of a signature on the arbitration agreement does not mean that a contract was not formed. A signature "is not always essential to the binding force of an agreement." *Ehresman v. Bultynck & Co., P.C.*, 203 Mich. App. 350, 354 (1994) (quoting 17 C.J.S. Contracts § 62 at 731–33). "In the absence of a statute or arbitrary rule to the contrary, an agreement need not be signed, provided it is accepted and acted on, or is delivered and acted on." *Id.* "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer . . . ." *Blackburne & Brown Mortgage Co. v. Ziomek*, 264 Mich. App. 615, 626–27 (2004) (internal citations omitted).

As an initial matter, Plaintiff does not identify a statute or rule that requires that the arbitration agreement be signed by both parties. Further, Defendant's lack of a signature on the arbitration agreement does not mean that an agreement was not made. A binding contract was entered when Defendant offered the agreement to Plaintiff, and

12

Plaintiff accepted by signing. *See Green v. Gallucci*, 169 Mich. App. 533, 539 (1988) (holding that mutuality of assent was met despite defendant hospital's lack of signature on the arbitration agreement); *Lowry v. Lauren Bienenstock & Assocs. Inc.*, No. 317516, 2014 WL 7338880, at *2 (Mich. Ct. App. Dec. 23, 2014).

Second, Plaintiff states that Defendant's failure to provide him with a copy of the agreement renders it unenforceable. (ECF No. 5, PageID.89.) It is unclear to the Court how Defendant's purported failure to provide Plaintiff with a copy of the arbitration agreement would render it unenforceable. (*Id.* at PageID.88–89.) Providing copies of the contract to the parties is not an element of a valid contract pursuant to Michigan law, *High*, 594 F. Supp. 2d at 798, and Plaintiff provides nothing to support this contention.

To the extent that Plaintiff argues that he did not actually sign the agreement (*see* ECF No. 5, PageID.88), this argument is also rejected.[7] Plaintiff does not provide any evidence that he did not sign

---

[7] Plaintiff's brief implies, but does not outright argue, that he did not actually sign the arbitration agreement. (ECF No. 5, PageID.88 (describing the agreement as "apparently 'executed'" by Plaintiff, and his signature as "apparently affixed").) However, in Plaintiff's motion for leave to file a first amended complaint, he makes additional arguments as to the arbitration agreement. (ECF No. 9, PageID.181–

13

the agreement (such as an affidavit); thus, there is no genuine issue of material fact whether Plaintiff signed the arbitration agreement. *See Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 798 (6th Cir. 2023).

Finally, to the extent Plaintiff argues that his promotion to a salaried management position means that the arbitration agreement has been "possibly superseded," that argument is also rejected. Again, Plaintiff does not provide any legal or factual support (such as any documentation related to the promotion or an affidavit) for this contention. As such, Plaintiff has not created a genuine issue of material fact as to the formation of the arbitration agreement.

Defendant Compass Group's motion to compel arbitration (ECF No. 3) is granted.

### C. Whether the case should be stayed or dismissed

Defendant requests that the Court dismiss Plaintiff's complaint or, in the alternative, stay all proceedings pending the arbitration. (ECF No. 3, PageID.25.)

---

184.) The Court considers these arguments waived because they were not raised in his response brief. *See Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 948 (W.D. Mich. 2009).

Generally, district courts must stay actions pending arbitration because "a [] dismissal order undercuts the pro-arbitration appellate-review provisions of the [Federal Arbitration] Act." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–42 (6th Cir. 2021); *see also* 9 U.S.C. § 3 (stating that a court "shall" stay proceedings when the issue is referred to arbitration). Dismissal is still "permissible" in certain situations, such as when the "dispute is moot" or when "both parties request a dismissal." *Id.* at 942.

The Court will stay, not dismiss, this action. First, this is not a situation in which both parties request a dismissal. Second, there is no indication that the dispute is moot such that dismissal would be appropriate. Defendant contends that a stay is "unnecessary" because "all of [] plaintiff's claims are arbitrable." (ECF No. 3, PageID.38.) However, as stated by the Sixth Circuit, a dismissal order would "undercut[] the pro-arbitration appellate-review provisions of the Act" as dismissal allows the nonmoving party to immediately appeal an order compelling arbitration. *Arabian Motors Group W.L.L.*, 19 F.4th at 942.

As such the Court will stay the case pending the outcome of the arbitration.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to compel arbitration is GRANTED. (ECF No. 3.) This case is now STAYED pending arbitration.

Additionally, Plaintiff's motion for leave to file a first amended complaint is DENIED as MOOT WITHOUT PREJUDICE. (ECF No. 9.) Plaintiff may renew his motion to amend the complaint when the stay is lifted.

IT IS SO ORDERED.

Dated: December 3, 2024         s/Judith E. Levy
Ann Arbor, Michigan             JUDITH E. LEVY
                                United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 3, 2024.

                                s/William Barkholz
                                WILLIAM BARKHOLZ
                                Case Manager